Good morning, Your Honor. Michelle Anderson on behalf of Ms. Hall, the appellant. Your Honor, Ms. Hall raises three main issues on appeal, and I would like to focus primarily on the notice issue raised in the briefs. The government's primary argument is that after the Supreme Court case of Irizdari, that notice is no longer required before the imposition of special conditions of supervised release, and I think the government's reading of that case is too broad. This represents a departure for this Court's case in Evans-Martinez. Evans-Martinez held that Rule 32 protection applies even after Irizdari to departures from the sentencing guidelines, and prior case law decided before Irizdari primarily the three cases of Cope, Fifield, and Wise. Refresh my recollection. Was there an objection along the lines that inadequate notice had been given? No, there was no objection, Your Honor. So this is a plein air review? Well, that's what the government urges. However, I don't think Well, how could it be otherwise if there was no objection? Well, I think that this Court's case in Wise is instructive on this point. I think it's hard to assign blame to a defense attorney for failing to object. There's no blame to be assigned. It's just a fact. You know, I wrote a couple of opinions years ago and tried to get around the plein air rule and got slapped down really hard by the Supreme Court. We don't like to get slapped down by the Supreme Court. It's an honor. It's an honor. But so you get even assuming it's an error, it's a plein air, even maybe that it affected substantial rights, but what's the practicality of this? If we were to agree with you, we send it back, and isn't the same thing going to happen? No, I disagree with that. Even if the error is plein, I think that it does affect her substantial rights. The community service component, for example, impacts her ability to seek. Well, but now you're getting into the question of whether the release conditions were appropriate. I thought you were talking just about notice. Well, that's true. But notice would have allowed us the opportunity to present arguments to the district court about why these conditions as imposed are inappropriate for this particular defendant. We never had a meaningful opportunity to do that. But when the conditions were imposed, that was the opportunity to say, wait a minute, she can't do community – she's never worked in her life. She can't do community service. Well, I disagree with the characterization that the defendant had a meaningful opportunity to be heard. As this Court indicated in Wise, trying to change a judge's mind after a judge has made up his or her opinion is a much different animal than being able to present arguments in the first place. And in that situation, which is similar to this situation here, that was construed as no meaningful opportunity. That was not meaningful notice. That was not a meaningful opportunity to be heard. And I think it's important that we look at the context of the sentencing hearing when we are deciding whether or not the defendant really had truly a meaningful opportunity to be heard. When we look at the context, the district court imposed a sentence on Ms. Hall over a span of eight pages. And during the district court's sentencing process, he, at the end, addressed loose ends. For example, whether or not there was an appellate waiver, whether there were remaining counts to dismiss, and whether the defendant had any particular BOP designation recommendation for the court. That wasn't a meaningful opportunity to address the conditions that had been otherwise imposed. And addressing the second issue, which is some of the things that we would have the district court do is to tailor these conditions in a way that made sense for this particular defendant. And because we didn't have that opportunity to be heard or because that opportunity came after the fact, we didn't have the ability to present those arguments to the district court. Because the district court made up its mind before the defense counsel had opened his mouth in this case. What was, were these conditions recommended in the PSR? No. They were not. They were not. They were just, and were they recommended by the government? No, they were not. They were uninvited and unnoticed conditions. So if we are in the plain error review territory, I think the error was plain. I think it affected her substantial rights. And the conditions as imposed have impacted her ability, will impact her ability to seek a job. She must perform 20 hours of duty. How will it impact her ability to seek a job? My recollection was that the community service is only coextensive with the time that she's not working. So if she gets a full-time job, she doesn't have to do it. That's true, but there's no escape clause for seeking a job. She must attain a job in order to avoid the community service. What's the problem with that? Well, I think when, one, it gives her two choices. Either she gets a traditional job or she goes to school. It prevents her from choosing other legitimate and worthy endeavors. For example, Your Honors, when she is released from Cassier, she will have three children who are under the age of 16. If she wanted to be a full-time mom, the supervised release condition, the special condition of supervised release condition prevents that endeavor. And that's an argument that I would have liked to have presented to the district court about how this community service condition is particularly onerous given her circumstances. Aren't those kinds of conditions always open to review, depending on changed circumstances? I mean, you could go back into court, assuming you're representing her, and saying, Your Honor, X, Y, Z, can we change this to accommodate her desire to be a full-time mom? It's true. I mean, you can do that all the time. Well, and it is an avenue of relief in a collateral proceeding. So that wouldn't be foreclosed at all if we were to disagree with you. That's still available to your client. Instead of dealing in hypotheticals and abstracts, then we have a real problem on our hands. And the district court is best in a best place to deal with that. Well, I think that in this case, whenever we're talking about conditions of supervised release, we're always talking about the future. We're always speculating about what might happen in the future and what we want to prevent from happening in the future. Here I don't think that this is speculation. I think it's a reasonable probability given her individual circumstances. Well, if past is prologue, maybe it's not. I'm sorry? If past is prologue, maybe it's not. Well, I think with respect to her individual circumstances, she was 28 years old at the time of sentencing. She had never been able to hold a job her entire life. She suffers from severe mental health issues. She has three minor children. And when she is released from custody, she's going to be saddled with serious felony convictions and in a job market that I think is pretty dismal for folks who don't have these burdens to bear. And what follows from that? What follows from that is that a community service condition, the community service condition as imposed here is particularly onerous to this client. And because we didn't have notice before the supervised release condition was imposed and did not have the opportunity to present these arguments to the district court, it should be at the very least remanded so that this condition can be tailored in a way that fits her circumstances. The judge didn't give any rationale for the community service? No. None, Your Honor. And I could see a rationale being that while she's not employed or enrolled in school, she needs to be doing something so she's not hanging around with her fellow gang members and getting involved in armed robberies again. I agree with Your Honor's assessment. But the options are unduly limited. Again, a stay-at-home mother, if Ms. Hall wanted to choose to be a stay-at-home mother in this case, she would be in violation of her conditions of supervised release, but I think we would all agree that that would be a worthy endeavor for her. And that's when you go in and modify. And that would be something I think should have been argued in the first place. This sort of discussion should have happened before the district court. But the notice is so we're not – if you're saying plain error, it falls under plain error, but it also seems harmless given the other avenues of relief that you have. Well, I disagree that it is harmless because, again, we're dealing with a reasonable probability. I also urge the court to consider the reasoning and whys before applying a plain error standard in this case because, again, I think abusive discretion is more appropriate where you're only invited to comment after – after the fact. When's her projected release date? Her projected release date, I believe, is in 2013. And I see that I have about 40 seconds, so I'd like to reserve that for rebuttal. Thank you. Thank you, counsel. Good morning. John Clouton Gray on behalf of the United States. This Court's notice to her as prudent in the supervised release context is clearly reconcilable with Irizarry as we set forth in our brief and as the Eleventh Circuit recently recognized in a case called Moran. Moran is, I recognize, an outside of this Circuit's precedent, but it's particularly instructive because in that case it singled out this Court's notice to her as prudence and acknowledged the very argument that the government's advancing here, that the notice to her as prudence is irreconcilable with Irizarry. In particular, this Court's notice to her as prudence was based on Burns and Rule 32. In Irizarry, the Supreme Court so cabined both the Rule and Burns that it can no longer be applied outside the plain text of the Rule, and the plain text of the Rule applies only to departures from the Guidelines. Special conditions of supervised release not listed in Chapter 5 of the Guidelines are not, they may be akin to departures, but they're certainly not departures within the plain text of the Rule. And it's the government's position that they're not even akin to departures. Just like Booker variances or sentences outside the Guidelines imposed under Booker come from Section 3553, supervised release conditions are a creature of Section 3583d, which provides that courts can impose any condition that is supported by a particular subset of the 3553a factors. The other reason why the Burns logic and the logic of this Court's prior notice cases doesn't apply is that Burns found a due process problem when the Guidelines were mandatory. When the Guidelines were mandatory, defendants had firm and settled expectations that when they walked into court, they would get a within Guidelines sentence. And so if a judge all of a sudden, at the end of the sentencing proceeding, departed, there was surprise. Here, in light of the statutory mandate of 3583d, defendants know that pretty much the sky's the limit on supervised release conditions. And then Irizarry kicks in if there is a truly surprising supervised release condition where the defendant can object or accept, E-X-C-P-T, saying, I know you don't like it, or ask for a continuance so that the lawyer can do research, confer with his or her client. Well, have you read our case, United States v. Evans-Martinez? Yes, I have, Your Honor. How do you deal with Evans-Martinez, which deals with the departures and says, by its own terms, the izarrary holding does not extend the sentencing departures under the Guidelines? That is what Irizarry held. Irizarry preserved the notice rule for departures from the Guidelines, but it preserved the notice rule only with respect to, quote, quote, departures, that term of ours, that is from the Guidelines itself, from Chapter 5 of the Guidelines. As opposed to variances, which are now after the 3553a considerations. Right. Exactly. Which I think is a silly distinction in use of language. But don't you think the conditions, you know, the Guidelines state certain conditions, and don't you think that if you are going to impose a condition that's not stated in the Guidelines as a condition, that is a departure from the Guidelines if you're not doing it as part of the 3553 analysis? Because you're not. It's a condition of supervised release. It's not a 3553 analysis. Well, Judge Wardlife, Chapter 5 does not chapter the Chapter 5 provisions that speak of supervised release conditions. They don't use the term departure. The term departure really is a very specific term of our textual term. But it's analogous. It's very analogous because the provision on conditions, I understand there's a catch-all, but it lists all the sort of types of conditions that are appropriate under the Guidelines. It does list a group of base conditions, some mandatory, some recommended. But imposing a condition not listed there is not a departure, and it's not akin to a departure because of the statute. That's the part of your argument I don't understand. Why is it not akin to a departure? It's not akin to a departure because just as a sentencing court can go all the way down to no custody time or all the way up to the stat max when selecting a custodial term under 3553 or under Booker, 3583d tells litigants and courts that sentencing courts can impose any condition that they believe aren't consistent with this subset of the 3553 factors. So, again, there's the statute creates the extra cushion above or outside of the Guidelines for a court to exercise discretion. As a result, a condition that's not listed in the Guidelines is being imposed pursuant to the statute, and it's not a departure from the Guidelines, just like a Booker v. Brown. But let's take it out of the realm of abstractions right now. These conditions of supervised release really came out of nowhere unexpectedly. They weren't in the PSR. Am I correct about that? They – Were they in the PSR? No. No. This judge did not disclose the sentencing recommendation letter, which is where I think that's what you're referring to, Your Honor. So the defendant had no knowledge at all that this was about to happen. I must respectfully disagree. Go ahead. Do. For two reasons. First, with respect to both conditions, community service is regularly imposed. It is listed in the Guidelines. Right. So every defendant who walks into court is on notice from the Guidelines that community service might be in play. And if they want to argue with the court or argue with the government about how much should be imposed, they're on notice from the plain text of the Guidelines. In this case, the gang condition didn't come out of nowhere. The PSR is littered with references to the defendant's membership in this gang. She committed her crimes in connection with other gang members. The father of her last child was a member of this gang and was shot during gang activity. So everybody who walked in that courtroom should know that the Ninth Circuit has listed gang conditions in Soltero, Vega, Ross, and here are all these references in the PSR to the defendant's gang membership. We better, at minimum, be prepared that the judge may want to impose it. And if the judge does, then again, the irisary procedure kicks in, you pop up, you object, you accept, or you ask for a continuance to be able to present further argument to the court. I also agree with you, Judge Stroud, on your point that there may not be a plain error here that affects substantial rights because of the modification procedures. Until this Court's recent decision in Watson out of San Francisco, I think it was an open question here whether the modification provisions of 3583E and 32.1 of Federal Rules of Criminal Procedure essentially mean that the defendant can't be charged and can always seek modification and therefore substantial rights can't be impacted. Watson recognized that for the first time. That was just a couple of months ago. But additionally, with respect to the supervised release condition of community service that you were talking about with Ms. Anderson, here, that condition also expressly provides for the probation office to exercise some discretion in its imposition. In Vega, this Court seized on that discretion to point out that there couldn't be a plain error because in order to really have the parade of horribles articulated by the defendant come to light, the probation office would have to be very strict or rigid in administering this requirement. And then that the defendant would somehow be unable to go to the district court. That's not the case in Vega. That's not the case here. Here, the defendant is free to negotiate with the probation officer, present any concerns about child care, for example, or about difficulty in having enough time to seek a job, and only then if the probation officer says, nope, you're doing 20 hours a week, and then only if the district court, if they go to the district court, this Court says, nope, you're doing 20 hours a week, only then would the parade of horribles that Ms. Anderson is articulating really come to light. You know, the problem I have with your argument is that conditions of supervised release, and if you violate one of these conditions, you can be in significant trouble. You can be sent back to jail for violating one of these conditions. And this one, the community service one, seems almost an impossibility for this woman to do. And so in a way, what this judge has done is put her in a position where it's almost inevitable she's going to violate. She could be hauled in for violating a condition of supervised release. She could have her sentence reimposed. This is a really serious matter. It's not just, oh, go talk to the probation officer and see if he lets you off. Well, I guess if I could challenge the premise, Judge Wardlaw, I don't think that this defendant is necessarily set up to fail here. I mean, it's important for her to have something to do so she doesn't go back to the gang. Well, that's a very good articulation of a reason for imposing this condition. But it seems that that's sort of a – it's a rationale that wasn't discussed, you know, at the time of the imposition, and it probably should have been. It wasn't discussed, but I guess I tend to agree with Judge Trotz's comment early on in the argument that it's very likely that the same things will be imposed. The child care issue is kind of a ready – How do we know that? I mean, sometimes people, judges might impose something because they don't understand exactly all the hardships that are entailed. And they don't really – without being advised of them, they can't really factor those things into their judgment. Well, because Judge Klausner is going to know that the defendant can come back when any of her claims are truly right, because he knows that there's the Rule 32.1 and 3583d modification procedures. And the record, even the appellate record that Ms. Anderson has presented here and the argument she's presented, I just don't see them convincing Judge Klausner to, in advance, change the conditions that he already imposed. In particular, the child care issue is largely a red herring because her youngest child will be 14 by the time she gets out of custody. Well, I have a 14-year-old, and I don't leave her alone. Well, I – her other two kids are also older. And I guess my point is that it's not like she's going to be caring for infants and toddlers who need a ton of hands-on time. These are going to be school-age children. What do you know about this? I mean, this is kind of interesting for you to talk about. Do you have 14-year-old kids? No, but I was one somewhat recently. No. That doesn't help. No, it's in paragraph 157 of the PSR. It lays out the ages of her children. And just doing the math, you can figure out when. And so you're telling us all your thoughts about what raising children entails. I mean, that's not really helpful. Is there any damage to the government by sending it back and taking a look at it again? Only in that the government, we litigate a lot of cases. We value, as the Supreme Court has recently said, a number of cases, plain-air cases. We value the contemporaneous objection. And when there's no contemporaneous objection, then it's a strain on resources to have us have to address these issues on appeal, and particularly when it would be easier to address it later through a modification motion or through negotiations. Isn't it easier maybe for you, but not for her? I mean, I don't know what her status – does she have a federal public defender? I mean, she's – you're putting the onus on her to have to come in and come back and do something. I think actually the rule that the defendant is advocating here really is – I think it puts the burden on the district court, the government, and this Court, which I think is unfair, because it presumes that there is an injury from the lack of notice when – and these conditions here didn't come out of left field. There was an opportunity to object, and there are a number of opportunities still to modify. I understand the gain-related. It might not – it might have occurred to people. But the community service, if you're not working for someone who hasn't worked and can't – hasn't been able to hold down the job, does seem to come out of left field. Again, she can seek modification. She can negotiate the birth-birth-and-off. She could even negotiate with our office, because sometimes we will stipulate to modify a condition if the defendant comes to us and makes a compelling case. Well, you could go and notify – negotiate now. You could step out in the hall after the argument, come back, or let us know in the next week. And we'll give you a week to negotiate before we issue any kind of a ruling. Well, Your Honor, I think I'd have to decline that request, because, again, I think it's It's not a request. I just said you said you could – they could come to you and you'd negotiate. When the claim is really ripe, when she can come forward and say, look, I have – I have these child care issues, or I'm having trouble trying to get – I'm having trouble getting a job. I'm having trouble going to school. There's not enough time in the week for me to do everything here. Can you give me a little relief? But here we just don't know how it's going to play out. We don't know if this defendant is going to continue the – with the progress that she actually demonstrated early on in this case, where she got her GED in custody. I think Judge – You were strongly in her corner at sentencing. The judge said I'd have given her a lot more if she had to cooperate with the government. You hadn't made your recommendation. Absolutely. Absolutely. But this is a case where Judge Klausner easily could have said she's going to be in custody for a while. She's going to get mental health treatment while in custody. She may continue to get additional vocational skills and education. And this is what I want to impose, because when she gets out, I need to keep her away from the gang. I need to get her working so she can apply the skills and the training and rehabilitation she receives in custody. Is there enough for the questions? Thank you, Court. Thank you, counsel. Can I have 30 seconds? Certainly.  I think, Judge Warren, while you put your finger right on the issue, I'm going to say that this isn't a parade of horribles in the abstract. It's a reasonable probability in this case. And why notice is so important is because focused adversarial testing is how we resolve matters relevant to sentencing. And the government's reading would do away with notice. It would do away with that process. And in every case in which the parties fail to anticipate an unannounced and uninvited And that's why we're here in having this conversation. Well, you know what I've been thinking? I sat through thousands of sentences, probably so did Judge Wardlaw. And what I read here is this is a woman who had incredible exposure in terms of what might happen to her. And all of a sudden, she ends up in front of the sentencing judge. And really, everything is going her way in large measure. She's getting a lot less than she otherwise would have. And the judge even said that. And so the judge has a whole program here that he sees is designed to help her get on and stay on the right track. And I'm just wondering what happens if the defense attorney starts vociferously arguing we don't want to have anything to do with this supervised release condition of community service. I mean, it seems I watched defense attorneys sit there and figure, boy, I've got three quarters of a loaf here. I'm not going to snatch defeat from the jaws of victory by starting to complain about something that everybody thinks is in her best interest. And if I were the judge, I would have said, too, if it had been brought up, well, listen, if you need to modify this, come back to me when you've got some real stuff to talk about and we'll do that. Isn't that the practicalities of it? And I'm talking about prong four of plain air. I understand what you're saying. But, again, I don't know that we can divine that the district court wouldn't have been receptive to these ideas. Are you arguing? I mean, so we have this legal question that's here in front of us, which is, is notice of non-guidelines, supervised release conditions still required after bizarre? You have that legal thing. Are you pushing this point because of that? Or are you pushing this point because you really believe that you would have been able to persuade Judge Kloss or some different thing? Okay. I think they go hand in hand. I think notice is incredibly important. You can't walk into a courtroom and litigate matters effectively if you don't know what's coming at you. And, second, I think the condition that was imposed here was unfair, as it was imposed on this particular defendant. District court may have a program, but programs don't work for everyone. They need to be individually tailored to that particular defendant. And that individual tailoring didn't happen here because the parties didn't have notice and didn't have an opportunity to be heard on those issues. And it really can't be done until she gets out of prison, either. But it could have been done, I think, Your Honor, respectfully at the time of sentencing. And had these conditions been noticed in that way, then the parties could have presented these arguments in a coherent fashion. It's a little like some of the cases that come to us when we say to the lawyers, you really want us to send this back for a new trial where your exposure will be 150 years instead of 10? You want to go to trial again on all 30 counts? I mean, it sounds to me a little like that. But that's not a criticism. It's just something that happens. Well, I don't think that here we would be snatching victory from the jaws of defeat. I think here notice is important. Give it reversed. I'm sorry, Your Honor? Give it reversed. You wouldn't be snatching defeat from the jaws of victory. Well, I think the point is clear. Thank you for your time. Thank you both very much. The case is submitted. The next case is Mitchell v. Richard Ellis.
judges: Reinhardt, Trott, Wardlaw